UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH ANN MAHONEY,                    Case No. 10-11785

              Plaintiff,                    Denise Page Hood
vs.                                        United States District Judge

COMMISSIONER OF                            Michael Hluchaniuk
SOCIAL SECURITY,                           United States Magistrate Judge

              Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On May 30, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Denise Page

Hood referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance and supplemental security Income benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 13).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on November 9, 2006, alleging that she

became unable to work on November 2, 2004. (Dkt. 6 Tr. at 110). The claim was initially disapproved by the Commissioner on April 27, 2007. (Dkt. 6, Tr. at 57-69). Plaintiff requested a hearing and on February 2, 2009, plaintiff appeared with/without counsel before Administrative Law Judge (ALJ) Roy L. Roulhac, who considered the case *de novo*. In a decision dated June 15, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 6, Tr. at 24-36). Plaintiff requested a review of this decision on July 13, 2009. (Dkt. 6, Tr. at15-16). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 13E, 20F, 21F, 22F, Dkt. 6, Tr. at 5), the Appeals Council, on May 14, 2010, denied plaintiff's request for review. (Dkt. 6, Tr. at 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was thirty-one years of age at the time of the most recent

administrative hearing.  (Dkt. 6, Tr. at 42).  Plaintiff's relevant work history

included approximately nine years as a cashier/cook and ophthalmic technician.

(Dkt. 6, Tr. at 136).  In denying plaintiff's claims, defendant Commissioner

considered fibromyalgia, endometrial hyperplasia, endometriosis, poly-cystic

ovarian disease, poly-tubal cysts, asthma, and anxiety as possible bases of

disability.   (Dkt. 6, Tr. 148).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

November 2, 2004.  (Dkt. 6, Tr. at 29).  At step two, the ALJ found that plaintiff's

fibromyalgia, irritable bowel syndrome, and anxiety were "severe" within the

meaning of the second sequential step.  *Id*.  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (Dkt. 6, Tr. at 31).  At step four, the ALJ found that

plaintiff could not perform her previous work as an optometric tech, receptionist,

and retail sales.  (Dkt. 6, Tr. at 34).  At step five, the ALJ denied plaintiff benefits

Report and Recommendation
Cross-Motions for Summary Judgment
*Mahoney v. Comm'r*; Case No. 10-11785

because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 6, Tr. at 35).

B.      Plaintiff's Claims of Error

The plaintiff first claims that the ALJ failed to give controlling weight to plaintiff's treating rheumatologist, who opined that plaintiff was disabled from all work and also gave specific limitations. According to plaintiff, the ALJ incorrectly rejected Dr. Johnson's opinions because she opined on the issue of disability, an issue "reserved" to the Commissioner and because her conclusions were "out of proportion with the remaining objective medical evidence." In addition, plaintiff asserts that the ALJ incorrectly relied on a notation that medication was effective in relieving plaintiff's pain and the failure to provide "test results" of focal points for tenderness or information to rule out other possible medical conditions.

Plaintiff argues that Dr. Johnson did not merely give an opinion regarding the ultimate issue of disability, but placed specific functional limitations on plaintiff and gave reasons for those limitations. This, according to plaintiff, is a medical judgment, to which the ALJ should have given controlling weight. Plaintiff also suggests that the ALJ was substituting his own medical judgment for that of the treating rheumatologist by stating that Dr. Johnson should have performed some type of unidentified "focal point" test and should have performed

other tests to rule out other conditions.  This suggests that the ALJ was questioning the diagnosis of fibromyalgia and therefore, was improperly substituting his medical judgment for that of plaintiff's treating physician.

Plaintiff also points out that simply because she obtained some measure of relief from some medications does not mean that she is functionally able to work. Plaintiff also points out that she tried multiple medications, many of which had no effect at all.  Plaintiff also asserts that the ALJ should not have discounted her credibility because she missed two appointments because of money and insurance situation.  Plaintiff also argues that the ALJ improperly evaluated her mental functional capacity and her credibility.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ gave proper weight to Dr. Johnson's opinions because she opined on an issue reserved to the Commissioner and because her opinions were not supported by her treatment notes and a note that plaintiff's medications were "effective."  According to the Commissioner, the ALJ also properly relied on other medical sources who "did not mention any musculoskeletal symptoms."  (Dkt. 13, Pg ID 527).

The Commissioner urges the Court to conclude that the ALJ reasonably found that Dr. Johnson's treatment notes were inconsistent with her opinion that plaintiff had debilitating limitations.  (Tr. 34).  Specifically, the Commissioner

points to Dr. Johnson's June 2008 opinion that plaintiff was extremely limited and could: sit or stand/walk for only one hour per workday and that every fifteen minutes she must get up and move around for fifteen minutes; occasionally lift and carry up to five pounds; never push, pull, kneel, bend, or stoop and must avoid fumes, gases, humidity, dust, and heights; that Dr. Johnson stated that plaintiff would have to take an unscheduled break every 30 to 60 minutes lasting from 15 to 60 minutes, that she would miss more than three days of work per month, and that she was incapable of even low stress work. (Tr. 376-77). Although Dr. Johnson frequently documented plaintiff's complaints, including pain and fatigue and found multiple trigger points, according to the Commissioner, there is limited evidence in her treatment notes to support a finding that plaintiff had extreme functional limitations. (Tr. 226-27, 231-32, 234, 236, 363, 365). Thus, "it is reasonable to expect that if plaintiff was very severely limited in a broad range of physical activities, that Dr. Johnson would have noted such symptoms on examination."

The ALJ also found that Dr. Johnson's opinion was inconsistent with her January 2008 treatment note reflecting that Plaintiff's medication was effective. (Tr. 34, 365). Other treatment notes from Dr. Johnson similarly indicate that although some medications were ineffective, and that plaintiff continued to have symptoms, she had some relief with other medications, which, according to the

Commissioner, conflicts with Dr. Johnson's opinion.  (Tr. 232, 234, 236, 363, 365).  In December 2005, plaintiff reported having severe fibromyalgia symptoms, but also stated that she had some benefit on Ultram.  (Tr. 232).  In March 2006, Dr. Johnson noted that plaintiff had generalized muscle pain and some fatigue, but that both Ultram and Cymbalta had been useful.  (Tr. 234).  In October 2006, plaintiff stated that she continued to have significant symptoms, but that Ultram had been "quite effective as pain medication."  (Tr. 236).  In May 2007, plaintiff reported "[n]ot doing well," but that Flexeril and Ultram provided "some benefit." (Tr. 363).  In January 2008, plaintiff stated that she had significant symptoms, but that both Flexeril and Ultram had been useful.  (Tr. 365).  According to the Commissioner, plaintiff incorrectly argues that the ALJ erroneously concluded that her medications completely relieved her symptoms.  The Commissioner asserts that the ALJ's decision reflects no such finding; rather, the ALJ's decision indicates that he understood that plaintiff continued to have symptoms, but that the treatment notes did not support extreme limitations.  For example, the ALJ noted that in December 2005 and March 2006, plaintiff reported ongoing fibromyalgia symptoms, but also stated that her medication was helpful.  (Tr. 32, 232, 234, 236).  Accordingly, if the ALJ had found that plaintiff's fibromyalgia symptoms were completely relieved with medication, as plaintiff asserts, then the ALJ would have found that she had no physical limitations. Rather, according to the

Commissioner, the ALJ accounted for plaintiff's continuing symptoms by finding that she had the RFC to perform only a limited range of light work.  (Tr. 31).

According to the Commissioner, the ALJ also correctly pointed out that Dr. Johnson's opinion "conflicts" with other examination notes that do not mention any musculoskeletal symptoms.  In February 2007, plaintiff presented to the emergency room with lower abdominal complaints and no musculoskeletal abnormalities were noted on examination.  (Tr. 260).  As noted by the ALJ, Dr. Patel examined plaintiff in April 2007 and found no abnormalities.  (Tr. 290-93).  The ALJ also noted that when plaintiff had a physical examination in April 2008 in connection with a colonoscopy, the doctor reported a generally unremarkable physical examination.  (Tr. 34, 345-48).  The Commissioner urges the Court to conclude that it was reasonable to expect that if plaintiff had limitations to the degree that Dr. Johnson stated, that doctors examining plaintiff would note some symptoms.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

   If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.

Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

Report and Recommendation
Cross-Motions for Summary Judgment
*Mahoney v. Comm'r*; Case No. 10-11785

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis and Conclusion</u>

The Court of Appeals for the Sixth Circuit has recognized the difficulty that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988).

"*As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia*, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim."

*Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) (emphasis added).  As the medical literature and case law recognize:

> According to a recent Merck Manual entry, fibromyalgia is "a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep." A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom. Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated.  Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia."

*Lawson v. Astrue*, 695 F.Supp.2d 729, 735 (S.D. Ohio 2010), quoting, Merck Manual Online Medical Library, http://www.merck.com.  The Sixth Circuit and the Social Security Administration have also recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia.  *See e.g.*, *Rogers v. Comm'r*, 486 F.3d 234,

243-44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston v. Sec'y of Health & Human Serv.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity); 64 FR 32410, 32411 (June 17, 1999) ("Fibromyalgia is a 'nonarticular' rheumatic disease, and objective impairment of musculoskeletal function, including limitation of motion of the joints, is not present, in contrast to the usual findings in 'articular' rheumatic diseases.  Joint examinations in fibromyalgia are necessary only to exclude other rheumatic diseases because physical signs other than tender points at specific locations are lacking.  The pain of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain, primarily in muscles, but sometimes in fascia, ligaments, areas of tendon insertions, and other areas of connective tissue.  The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.") (internal citations omitted).

In this vein, when evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for

clarification:

> Because treating source evidence (including opinion
> evidence) is important, if the evidence does not support a
> treating source's opinion on any issue reserved to the
> Commissioner and the adjudicator cannot ascertain the
> basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the
> source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.). To the extent the ALJ viewed Dr. Johnson's opinions as inconsistent the remainder of the record evidence or found her opinions to be "extreme," the ALJ should have at least considered contacting to Dr. Johnson for clarification.

An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). Here, the evidence to which the ALJ points as "contradictory" or unsupportive of the treating physician's opinions is not substantial. Pointing out

that plaintiff had some relief from some medications does not necessarily contradict the functional limitations imposed by her treating physician.  Morever, the fact that her muscle pain and weakness complaints were not expressly addressed during an emergency room visit for abdominal pain and during a pre-colonoscopy examination is hardly surprising or a particularly persuasive ground for rejecting her treating physician.  It seems fairly unlikely that her fibromyalgia symptoms would be addressed during either of these visits.  Moreover, even if plaintiff did not have any muscle pain at those two single moments in time, while other medical issues were being addressed, is simply not a sufficient basis for rejecting the opinion of a long-term treating specialist.

The undersigned is also concerned that the ALJ did not fully assess plaintiff's fibromyalgia under standards required by the Sixth Circuit given that an analysis of plaintiff's subjective pain complaints is critical and that a purported "lack of objective medical evidence" is not a proper basis to reject a treating physician's opinion when evaluating fibromyalgia.  Much of the ALJ's rejection of plaintiff's claimed limitations is the alleged lack of foundation in "objective medical evidence."  This course has been repeatedly rejected in cases addressing the assessment of fibromyalgia.  The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not

particularly relevant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Canfield v. Comm'r of Soc. Sec.*, 2002 WL 31235758, *1 (E.D. Mich. 2002) (discussing how it is "nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking").  This is also another reason the ALJ should have contacted plaintiff's treating physician to clarify her opinion regarding plaintiff's functional limitations.  Plaintiff's medical records evidence generally and gradually worsening muscle tenderness and increased pain over time, and the increased used of various anti-inflammatory, nerve-pain, and psychiatric medications.  In this vein, the ALJ also failed to account for the consistency of plaintiff's complaints. Consistency is not determinative, but consistency should be scrutinized when taking the entire case record into consideration.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

The ALJ, in commenting on plaintiff's credibility as it relates to pain symptoms, must follow the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p.  Given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence without evaluating plaintiff's pain

and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well. *Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) ("[B]ecause of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance.") ; *see also Rogers*, 486 F.3d at 243 ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."); *Hayes v. Comm'r*, 2010 WL 723766, *9 (N.D. Ohio 2010) (The ALJ erred in using objection medical signs such as joint deformity, effusion, range of motion, reflexes, sensation, and muscle strength to determining whether a claimant's subjective assertions regarding pain were credible.). In light of the foregoing conclusions, the undersigned also suggests that the ALJ should re-assess plaintiff's credibility, subjective pain complaints, and mental impairments in the context of her fibromyalgia. While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[2] a remand is

---

[2] "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

nonetheless required.

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is not supported by substantial evidence, justifying a remand and investigation consistent with this Report and Recommendation.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 26, 2011                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on July 26, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Mark A. Aiello, Eddy Pierre Pierre, Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Mahoney v. Comm'r*; Case No. 10-11785
